And we'll proceed to hear argument in the third case on calendar for argument this morning, which is 24-7356. Tristan Assance v. Brandon Holzer. I think you're on the wrong sides. That's correct. Yes. And we'll hear first from Ms. Handelman. Good morning, Your Honors. May it please the court. My name is Leah Handelman. I'm here with my co-counsel, Dylan Barkley. We represent Detective Brandon Holzer, who's the appellant in this case. He's from the Lincoln County Sheriff's Department in Libby, Montana. I'd like to reserve two minutes for rebuttal if I may. The doctrine of qualified immunity recognizes that in tense and rapidly evolving situations, courts are reluctant to second-guess law enforcement officers' decisions without looking at the entire event and considering the officer's mindset amid the uncertainty and the chaos. Chaos and uncertainty clearly describe what Detective Holzer faced on the morning of January 14, 2021. The undisputed facts establish that on that January morning, Detective Holzer and his fellow law enforcement officers were faced with what can only be described as a tense, rapidly evolving, and uncertain situation. But this case really just comes down to one issue, which is whether or not Detective Holzer reasonably perceived. Everyone agrees that he thought that the taser shot was a discharge of the firearm. Everyone agrees that it's in the complaint. But the question is whether or not it was reasonable to have that belief in light of all of the circumstances, and we have to construe those circumstances that are alleged in the complaint, and even if we accept the stipulation, we have to draw all inferences from those in the light most favorable to the plaintiff. So why isn't it a triable issue that it was unreasonable to think that it was in fact a discharge of the firearm by Mr. Assange because his back was turned, he didn't make a motion towards grabbing the firearm, and he was with an earshot of hearing less lethal, less lethal. Well, thank you, Your Honor. So I think what we have to look at, and you referenced it, we have to look at the totality of the circumstances when we're considering whether the officer was faced with what he reasonably perceived to be a threat, and we're looking at not what actually turned out to be true, but what the officer knew at the time and what he reasonably may have perceived. If there's any mistake of an officer, he believes something that's wrong, he wins qualified immunity. There are some mistakes that are so unreasonable that the officer doesn't win, correct? Correct. I think it depends on the totality of the circumstances. Then the question is where this is on that line, because it was a mistake, and everyone realized it was a mistake, he did not have the firearm, he did not discharge it, you know, in that sense, it was an error. And the question is whether or not his belief, everyone agrees he subjectively believed, in good faith, believed that it had been discharged, but maybe that was just completely objectively unreasonable. Right, and I would submit that it's not, and I would submit that the undisputed facts, what we have here is we have law enforcement were called out to the scene because there was a domestic disturbance, which implies threatening or violent behavior before they even got there. As soon as law enforcement officers arrived, Mr. Assange grabbed a gun and then was told repeatedly to drop it and refused to do so repeatedly. He then proceeds to set up his phone to document what had turned out to be a standoff, and all of this is occurring within two minutes. Now, Detective Holzer is about 20 yards away. He can hear the request to drop the gun, I think he can hear Mr. Assange's response. The complaint does allege that Captain White spoke loudly enough for him to hear the less lethal, but there's no allegation that Detective Holzer actually heard the less lethal response or the less lethal instruction. But again, we have to draw the inferences, so if it was said loud enough for him to hear, the inference is that he did hear it. The inference could be, yes, the inference is that he heard it, but that, the taser, from the time the less lethal command came to when the taser was actually deployed was 36 seconds. Now, where does that precision come from? Were there any audio or videotapes of this incident? Yes, there are. Okay, but they're not in the record of this because it's a 12-3, it's a 12-C motion. Right. What if you had a similar scenario here, but instead of the officer firing his taser, a kid, a neighbor, lit some firecrackers and Officer Holzer thought it was, you know, that Mr. Assange had fired his gun and shot him. Would qualified immunity apply in that case? I think it would depend on the circumstances. I mean, what Detective Holzer knew was that he had an armed, non-compliant individual and he heard the sound of what he perceived as gunfire coming from the direction of Assange and his fellow officer, Deputy Kraft, who was within five yards of Mr. Assange. And the complaint alleges, and we have to accept it as true, like you said, that Detective Holzer believed that Deputy Kraft had been shot. Again, he has a, I think we have to look at the totality of the circumstances. We have a two-minute encounter. So are you saying that you think qualified immunity would apply if he mistook a firecracker nearby as gunshots? I mean, I think it would probably depend on more facts. You know, if the firecracker was behind him, then probably not. I think, you know, he heard a sound that clearly came from the direction of where this standoff was occurring. He couldn't see Mr. Assange's hands. He knew he had a gun and he knew he was refusing to drop it and had been setting up his phone in what could have been an intention to escalate the situation and provoke a suicide by a law enforcement officer. Moving to the second prong of qualified immunity. Were there any cases that told Detective Holzer you can't do this? It's a clearly established law that you can't do this. No, and I'm glad you brought that up, Judge Fitzwater. I think there are actually cases that establish the opposite. And we spoke at length about the Casella case in our briefing. And in that case, we had a woman, Hughes, who was a suspect who was acting erratically and armed with a knife. Here, we had Assange, who was acting erratically, intoxicated and armed with a gun, a far more deadly weapon. In Casella, the officers asked the woman, Hughes, to drop the weapon and she refused. Do you agree that if Assange did not fire a weapon and the officer knew that he didn't fire a weapon, that this would be a bad shooting under the Fourth Amendment? If the officer knew that, oh, that Assange did not fire the weapon. If he knew it was the taser. I would agree with that. You couldn't shoot him. Right, right, right. So it all comes down to the mistake of fact. Because everyone agrees that if his assessment of the situation was correct, the shooting was good. And if his assessment of the situation was wrong, but he knew that it was wrong, then the shooting is bad. So it just comes down to the reasonableness of his belief and what role that plays in each prong of the qualified immunity. Right. And I mean, I think the reasonableness does speak to the first prong. I think the second prong, which Judge Fitzwater brought up. I make of the comment in Torres versus City of Madera, where we said we drew this distinction between while the constitutional violation prong, prong one, concerns the reasonableness of the officer's mistake of fact, the clearly established prong, prong two, concerns the reasonableness of the officer's mistake of law. And then we later went on to say, thus, for purposes of determining whether Officer Noriega, who was a defendant in that case, is entitled to qualified immunity under the second prong, we assume she correctly perceived all of the relevant facts and asked whether an officer would have reasonably believed at the time that the force actually used was lawful under the circumstances. So that would seem to suggest that we have to look at what the actual facts were, but you would lose under the actual facts. Well, and I would disagree when we're talking about reasonableness and the perceived threat, because what what speaks to reasonableness is whether the officer perceived a threat. It's not whether that actual threat turned out to be true. And so in that regard, that's why we have to look at the totality of the circumstances. And we can't look at just the mistake in a vacuum. We have to see what did Detective Holzer knew, how long had this been going on? And that was instructive for the court in Casella as well, because they noticed that this had been that she had been shot when they'd been only there for a minute. She was within five feet of a bystander. She made no lunge or furtive movement at all. And the officer shot her and were granted qualified immunity. Here we have very similar situation. We have Mr. Assange with a gun within five yards of Deputy Craft. And then we have what what Detective Holzer reasonably perceived as a gunshot. And he acted accordingly. Could do you could a a reasonable jury at prong one conclude that it was objectively unreasonable to think that he had fired the shot? That Assange had fired the gun? I I don't I would submit no. I think if you have an armed individual, you can't see what's going on. Things are unfolding rapidly and uncertainly. It would be reasonable to assume and and the complaint itself alleges that this policy that law enforcement officers have to announce taser, taser, taser before they fire a taser. Someone says was not done, which the complaint says was not done. And it was not. Yeah, it was not done in this case. And the complaint acknowledges that that policy is in place to prevent mistakes like this from happening. So it acknowledges that a taser can be mistaken for gunfire. It's not an unusual situation. So I think, you know, given the totality of the circumstances, it would not be reasonable for a jury to find that Detective Holzer acted unreasonably in response to what he perceived was a threat on his fellow law enforcement. Can you address our decision in George v. Morris, you know, somewhat similar fact pattern, a domestic incident. And in that case, I think the suspect even had a gun in his hand. And we seem to say you can't shoot a suspect unless there's some threat in terms of, you know, a furtive movement, a verbal threat. And here, Mr. Hassan's back was turned. I don't think he had his gun. Either was in his holster or on the floor or on the table. Right. So I think in George, you're right. In that case, there was not a furtive or there was not a furtive movement. And the court found that significant. But they also found it significant that there were not other objective factors that justified the use of force in that in that case. And in this case, we would submit that there were. I would also remind you that in Casella, there was also no furtive movement by the suspect in that case. And the court deemed that the use of force was reasonable in that case. In those cases, the weapon was in the suspect's hands, right? In Casella? Yeah. Yes. Yeah. She had a knife in her hand, but was not wielding it. And the court still granted. So it seems like it really comes down to the sound and whether that's reasonable. It goes to Judge Collins point of don't we have to assess the reasonableness? And maybe we can't do that at this stage. I mean, I think we can because the complaint itself alleges that that is a reasonable or implies that that would be a reasonable response. And that's why they criticize Deputy Craft, who's also a defendant in this action, for not announcing taser, taser, taser. They they sort of make the but for connection between Deputy Craft's lack of announcement and Detective Holzer's actions. And I think I'm just about to my rebuttal time, so I will. All right. Thank you, counsel. We will hear next from Mr. Wagner. May it please the court. Nate Wagner appearing on behalf of Mr. Assange. This is a 12 C judgment on the pleadings motion. And under the relevant guidelines, the court is required to take the allegations of the complaint as true. And I think it's helpful to go back to what was alleged in the complaint. And at paragraph 42 of the complaint, it's alleged that Holzer admitted after this incident played out that he did not observe Assange holding a pistol in his hand prior to shooting him. That is deemed to be true. The complaint establishes that Tristan was not, in fact, holding a pistol in his hand at the time. The complaint alleges that he had his back to the officers, correct? He was turned so that the bullet hit him in the shoulder and in the calf. So, but paragraph 42 doesn't say that Deputy Holzer knew that he didn't have the gun. Well, it says he admitted he didn't see it. He admitted he didn't see it. Correct. But you said that he was backwards. But it also, the complaint says that Deputy Holzer shot Tristan based on his belief that Tristan had fired upon Deputy Kraft. You're not contesting that he actually believed that he had shot. That's in the complaint. That's what he has stated. So you can't read. Obviously, if he believed that Mr. Assange, and you've said in the complaint that Mr. Assange, that he believed that Mr. Assange had fired upon Deputy Kraft. If he actually believed that and you've put that in the complaint, it's not a reasonable inference from paragraph 42 that he actually believed that he did not have the gun in the hand since it is not possible to shoot someone with a gun without using your hands. That's not a reasonable inference from 42. He didn't see the gun in his hand. But he, so that contributes to the reasonableness of the belief. But the belief was that he did have the gun in his hand and fired it. He didn't see it, but he believed it. Well, and Your Honor, we've taken what Mr. Holzer said after the shooting. And tried to articulate that in the complaint to explain. You could have written in the complaint that you contest whether he really believed that. You could have done that, but you didn't. The complaint says what it says, and you have to take the good and the bad. And you've conceded in the complaint that he actually had the belief that Assange had fired the gun. It's mistaken. It's obviously mistaken in hindsight. And then the question is, was it reasonable? But you can't argue that Assange, I mean, that Deputy Holzer did not believe that Assange had the gun in his hand. Well, Your Honor, yes. The implication, obviously, is that it's an unreasonable belief. It's not objectively, there's no objective basis for his belief. But why is that true? I mean, the complaint concedes that the sound of a taser can be mistaken for the sound of a firearm. Indeed, the complaint says that that's why you're supposed to shout taser, taser, taser. And the officer didn't do that. Did not say taser, taser, taser. You know, the other officer said less lethal, less lethal. And then the other officer uses the taser, but doesn't say taser, taser, taser. He hears a shot and within one second, Holzer fires. Because he hears it, there isn't the taser, taser, taser. He fires. You will allege that he's turned around, so he can't see the hands. Why isn't it objectively reasonable to think that was a shot from Assange? It's objectively unreasonable at this phase because of what's alleged in the complaint, which is that Mr. Holzer admitted he did not observe Assange holding a pistol in his hand prior to shooting him. And so when you take that... Do you have to see the gun in the hand to know or believe that it's been used to shoot? I mean, if someone's behind a car and I see them go behind a car with a gun and then a bullet comes out the other side, I don't see the hand. But it's reasonable to think that it's a gun. If there was an allegation in the complaint, Your Honor, that says that Detective Holzer could not, was unable to see how Assange was holding the gun and we had to take that fact as true, then we may be able to get to a position of saying his belief was objectively reasonable. We don't have that in the complaint. The complaint does not say Detective Holzer couldn't see Tristan's hands. The complaint says Detective Holzer admitted not seeing a pistol fired or shooting him. The complaint says Tristan was not holding a gun. I don't think, given what you've conceded in the complaint, I don't think you can argue that because he didn't see it in his hand, he therefore did not believe it was in his hand because you conceded that he acted on that belief and had that belief. Sure, but this all presumes the unreasonableness of his explanation. Correct. That's right. This all comes down to everyone, he didn't have the gun. He didn't fire the gun and in omniscience and hindsight, the shooting was bad. Everyone agrees that. I mean, counsel agreed that if he knew that he hadn't fired the gun, the shooting is a flagrant violation of the Fourth Amendment, there'd be no qualified immunity. Um, but if he did have the gun and he did fire it, the shooting is absolutely good. And so it really comes down to the reasonableness of his belief. Everyone agrees he thought it was the gun. And it's just, is there a triable issue on the reasonableness of the belief? And then how do we fit that into the qualified immunity? I agree 100%, Your Honor. And I think that the arguments made by Ms. Handelman and the argument that I'm making here today are arguments that should be presented to a jury in closing. This is a case that determination of reasonableness is a fact question for the jury based on the evidence that comes out of trial. So tell me your best arguments as to why it's objectively unreasonable to have thought that he fired the gun. It's objectively unreasonable under the facts alleged in the complaint because at no point was Tristan holding the weapon in a way that was a threat to any officer. He was not reaching for the pistol when he was shot by Holzer. At no time after the arrival of law enforcement did Assange point a pistol at any officer or bystander. And so given that all those facts have to be deemed to be true, that he was not holding a gun and he was not, and that Mr. Holzer admitted that he didn't see him holding a gun, then the fact question of whether it was reasonable for him to have concluded that a gun somehow manifested in his hand and fired at a fellow officer, whether that's a reasonable belief. We contend that it's not. That's a fact. Whatever the source of the loud noise, it couldn't have been Assange. Correct. And, you know, there's the car backfiring case. There's a couple of cases that talk about loud noises. And in those cases, you have a situation where I didn't go deep into the pleadings of those cases, but I believe the facts demonstrate that the reason that it was reasonable for an officer to conclude that that shot had been fired is because there wasn't an obvious alternative proof that it couldn't have been the suspect shooting as there is here as what has to be taken as true in the complaint. Can you address the second prong of qualified immunity? What's your best case to show the right was clearly established? I think the case relied on by the district court and the D'Uriel B. Rutherford case is very solid on that point, Your Honor. And then the Kernow versus Ridgecrest case, which I think the interesting part about that case is... The Supreme Court has specifically chastised us for repeatedly overruling, over reading D'Uriel. Yes, but I think that this is not a case where it would be over reliance on the Kernow case. In Kernow, you've got an officer, you've got a person who is holding a firearm, but not using it in any way. And in the D'Uriel case, you've got an unarmed person. I think that there's a laundry list of cases where the courts have repeatedly stated that the mere presence of a weapon, even a firearm, is not justification for shooting. And it's been clearly established that that firearm has to be used in a threatening manner. There has to be the furtive gesture, the weapon being pointed, the weapon being brandished. So for purposes of applying the law at prong two, do we take the facts as the officer believed them to be, or as the officer should have believed them to be because his belief was objectively unreasonable? Yeah, I think that the case law talks about we assume the officer correctly perceived. And- So there's no room, it's that harsh? We overlook even reasonable errors and we charge them with omniscience and they stand or fall on that? I don't know how to interpret that sentence where it says we assume the officer correctly perceived. Does that mean- That I quoted before. Yes, yes, Your Honor. Does that mean we take the officer's perception at face value? Or does that mean we assume the officer, for the purposes of this analysis, actually perceived things correctly? My interpretation is the latter, that when you're talking about the law, the officers are charged with understanding the law and need to correctly assess the situation and can't escape the consequences of violation of a person's Fourth Amendment rights merely by saying I made an unreasonable mistake and therefore I'm immune. The appellant also takes issue with the district court's decision to decline to consider the statement of stipulated facts. And I think the district court is within its rights to confine its analysis to what's in the complaint and the pleadings. But we've said that judicially noticeable material can be considered on a 12b6 or 12c. And I mean, if you've actually stipulated to the facts, isn't that subject to judicial notice? It could be. I don't know that it's mandatory. My point- Because it's kind of weird. We would normally say, well, you know, we can't address that issue because there has to be a trial on that point. Well, it kind of makes no sense here because there's not going to be a trial on that point because you all signed a stipulation saying what the fact was. And so it's kind of surreal for the district court to actually rely on the fact, well, maybe he put it on the ground. You've all stipulated he didn't put it on the ground. He put it in his waist. It seems very odd to ignore it. Yeah, Your Honor, we feel this is harmless error at worst. It doesn't change the analysis. If a stipulated fact is that the gun was in his waistband, I don't know how that supports Holster's idea that that gun was fired. Well, it certainly makes a difference in the following sense, in that if his back is turned, if it's on the ground to make the shot, he'd have to bend over to retrieve the gun before he could be the source of the loud noise. And since nobody said he bent over, that would be objectively unreasonable to think he was the source of the shot. But if it's in his waistband and his back is turned, it could be in his hand. You wouldn't see it. And so maybe it's reason. So it actually maybe does make a difference. Well, Your Honor, here's why I think it does not. I don't think there's anywhere in the complaint or in the statement of stipulated facts where we have alleged that Detective Holster could not see Tristan's hands and therefore it was reasonable for him to think that there could have been a firearm in his hands. In other words, drawing the inferences in our favor as what's alleged in the complaint, there is nothing that establishes a fact that says Detective Holster could not see Tristan's hands. Having his back turned, I can demonstrate for the court that I could easily turn my back and you could still see my hands. And so at this phase, I think that's a fact issue that can't be resolved. Have I addressed the court's concerns? Yes, you may proceed. I don't have anything further to offer. This is a qualified immunity case. It is a case that it's clearly established that Detective Holster would have to have reasonably perceived that Tristan posed a threat. And at this phase, that's not something that can be established by an allegation, a pleading or a statement of stipulated facts were the court to consume that the district court should have considered the statement of stipulated facts. What about the assertion that Mr. Assange during this whole time is saying things like kill me, kill me, I love my kids. No one has talked about that in this argument. It seems to me that that enters into what was reasonable for Detective Holster to be thinking about. Your Honor, the issue of a person having a mental health crisis while interacting with law enforcement actually weighs in favor of the victim of the shooting. And that's established, I think, in the Dioro versus Rutherford case that was cited by the district court. Mentally and emotionally disturbed person is deemed to be kind of more at risk of not understanding the situation and there needing to be a warning given, for example. And there's no warning given in this case. And the court in the Dioro case noted that a person who's in mental crisis is not going to understand that they might be at risk of being shot. What about the other side, that it might make it more reasonable that Detective Holster thought the shot had come from Assange because that's the way he was acting? Well, he wasn't threatening anyone. He was saying, kill me, to the officers. But he was not threatening anyone else. He wasn't threatening any officer. He wasn't articulating by word or act that he wanted to harm anyone. And I see I'm out of time. That's fine. Okay. That answers my question. Okay. All right. Thank you, counsel. All right. We'll hear rebuttal now. Your Honors, I'd like to address the clearly established law prong a little bit further and remind this court that this qualified immunity can be granted solely on this prong if the court has trouble with the first prong of the analysis. And that was done in Odone v. Sanford. And I also want to remind the court it is Assange's burden to prove that the right was clearly established. And I would submit that Mr. Assange has not met his burden here. But what facts do we take for purposes of prong two? Is it what he subjectively believed? Or if we conclude that a trier of fact could find that his subjective belief was objectively unreasonable, the belief that he should have had? I think it's what he reasonably perceived. I don't think you can... You do agree with the reasonable overlay that if his subjective belief was objectively unreasonable, it isn't what gets plugged into prong two. So in other words, you can't just have any belief that you want and you skate. There is some restraint. Right. And I think, yes, with respect to the mistake for the taser and the gunfire, I think the circumstances leading up to it... If it was wholly unreasonable, then we wouldn't take that as the facts for purposes of prong two. Yes. And I think in that case, it would be one of those obvious cases where generalities would probably suffice. You know, you'd be able to look at generalities from Graham or any of those other cases. But in this case, we have a very unique set of circumstances. And in this case, specificity is required in order to prove that Detective Holzer should have been aware that his conduct was violative of a constitutional right. Based on the perception that he had at the time that his conduct arose. I want to talk about Dioral. Mr. Wagner mentioned that Dioral involved a mentally ill individual. They were investigating Assange for a domestic disturbance and he was intoxicated. This was not the same as a welfare check. I see that I'm out of time. It's all right. I'll give you a few more seconds.  This was not the same as a welfare check. I also... Dioral was physically compliant with the officer's instructions. He pulled away a board at one point and threatened office, held it up above his head. They told him to drop it. He dropped it. He had a toy crossbow. They told him to drop it. He dropped it. So this is the complete opposite of Assange who refused multiple requests to drop the gun. Okay. All right. Thank you, counsel. All right. The case just argued will be submitted and the court will stand in recess for five minutes. All rise. Thank you.
judges: COLLINS, LEE, Fitzwater